UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | IP 98-100-CR-B/F |
| | ) | No. 1:06-cv-392-SEB-VSS |
| VICTOR T. STEELE, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion for Relief Pursuant to 28 U.S.C. § 2255**

Victor T. Steele ("Steele") seeks relief pursuant to 28 U.S.C. § 2255 with respect to various convictions and sentences entered following trial in this court. The United States has responded to Steele's motion, and Steele has replied. For the reasons explained in this Entry, the court finds that Steele's motion must be **granted in part and denied in part**.

## I. Background

In June 1998, Steele abducted Anita Wooldridge from Kokomo, Indiana, and held her captive, first in his Indiana residence and then his truck as he abducted her to LaCrosse, Wisconsin, where he continued to hold her captive for several days. On July 2, 1998, police found Wooldridge locked in a metal cabinet in a house in LaCrosse. Once rescued, Wooldridge told of her abduction, of repeated sexual assaults by Steele, of Steele's threats to kill her, of Steele's use of a stun gun against her, and of days and nights locked in the metal cabinet. This horrific ordeal, however, ended without the loss of life and Steele has been held accountable for his crimes.

Prior to trial, Steele made a valid waiver of his right to representation by counsel. He thus represented himself at trial, although Indiana Federal Community Defender Bill Marsh served as stand-by counsel both before and during the trial. At trial, Steele was convicted of kidnaping in violation of 18 U.S.C. § 1201(Count 1), carjacking in violation of 18 U.S.C. § 2119(1)(Count 3), use of and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 2 and 4), and possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 5). Steele was sentenced to life imprisonment on Count 1 and to

varying lengths of fixed terms on the remaining counts, including a concurrent sentence of 300 months on Count 3. Steele's convictions and sentences were affirmed on appeal in *United States v. Victor T. Steele,* 2000 WL 796191 (7th Cir. June 15, 2000) (unpublished opinion), *cert. denied, Steele v. United States,* 531 U.S. 1093 (2001).

In his direct appeal, Steele asserted error based on (1) this court's finding that he had made a knowing and intelligent waiver of counsel, (2) the United States' asserted violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in relation to prospective witnesses Jeremy Trojano, Larry Wynn, and Gina Pickett, (3) the denial of a continuance to permit him to develop a certain aspect of his intended defense, and (4) the prosecutor's reference during rebuttal closing argument to Steele's non-testimonial courtroom statements and conduct as evidence to be considered by the jury. After his direct appeal was concluded, Steele filed a motion for a new trial. That motion was denied, which denial was affirmed on appeal in *United States v. Victor T. Steele,* 72 Fed.Appx. 478 (7th Cir. August 6, 2003).

Steele now seeks relief pursuant to 28 U.S.C. § 2255, which statute "is the primary collateral relief mechanism for federal prisoners . . . ." *Reyes-Requena v. United States,* 243 F.3d 893, 901 n.19 (5th Cir. 2001). This law provides for collateral relief from a federal conviction or sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The parameters of relief pursuant to § 2255 were reviewed in *Young v. United States,* 124 F.3d 794, 796 (7th Cir. 1997):

> Section 2255 is not a way to advance arguments that could have been presented earlier--especially not when the arguments rest entirely on a statute. *See Reed v. Farley,* 512 U.S. 339, 114 S. Ct. 2291, 129 L.Ed.2d 277 (1994). Although sec. 2255 para.1 permits a collateral attack on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States," only a small portion of statutory claims demonstrate that the sentence or conviction is itself a violation of law. The error must be so fundamental that a "complete miscarriage of justice" has occurred. *Reed,* 512 U.S. at 348, quoting from *Hill v. United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L.Ed.2d 417 (1962). Other "non-constitutional errors which could have been raised on appeal but were not, are barred on collateral review--regardless of cause and prejudice." *Bontkowski v. United States,* 850 F.2d 306, 313 (7th Cir. 1988).

Thus, relief pursuant to § 2255 is limited to correction of an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *Borre v. United States,* 940 F.2d 215, 217 (7th Cir. 1991). Additionally, it must be noted that "[a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (emphasis in original).

## II.  Discussion

*Steele's Claims.* In the present action, Steele again presents a potpourri of claims, including that he was denied "the right to *pro se* or to prepare" for trial and to participate fully in the trial, that he was denied access to the Marion County Jail's library, and that he was denied the right to deliver subpoenas to certain individuals. Steele complains about a statement by the court which he suggests constituted judicial notice that the victim was truthful. He alleges additional *Brady* violations. He renews the claims which were decided in his direct appeal and also complains that there was no forensic evidence offered during trial and that he was not allowed to study photos of the victim and her medical records at the same time. He also asserts that Mr. Marsh was ineffective in assisting him at trial, that his attorney was ineffective in the direct appeal, and that other errors afflicted the proceedings.

*Defaulted Claims.* The majority of Steele's claims relate to matters which either were or could have been included in his direct appeal. To the extent they were not included in his direct appeal, they cannot be considered for the first time in this § 2255 action absent a showing of cause and prejudice or that the failure to consider a claim would result in a miscarriage of justice. *See, e.g., Waldemer v. United States,* 106 F.3d 729, 731 (7th Cir. 1997). Some claims are exempt from the rule of procedural default, while other claims are based on developing case law and merit separate discussion.

As to the claims which are procedurally barred because they could have been but were not included in his direct appeal, Steele suggests in an ill-defined manner that this default is due to the ineffectiveness of his appellate counsel. Although the ineffective assistance of counsel can be the cause for a default, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." *Coleman v. Thompson,* 501 U.S. 722, 754 (1991). The defaulted claims will be considered in conjunction with Steele's claim of ineffective assistance of counsel.

Steele raises a number of new issues which were not available during direct appeal or which he contends rest on new developments in the law. Steele has procedurally defaulted as to a number of these issues as well, but for various reasons, including the suggestion of cause and prejudice, we shall proceed with our analysis of these issues.

*Trial Preparation.* Steele contends that he was unprepared for trial because of his lack of access to the library at the Marion County Jail, which was the facility where he was confined prior to and during trial. Steele asks this court to subpoena documents from the Marion County Jail and to hold a hearing and call witnesses, but he makes this request without identifying whom he seeks to call as a witness or what information he would establish. This line of inquiry, moreover, is a dead-end for Steele. In *Kane v. Espitia,* 126 S. Ct. 407 (2005), the Supreme Court noted that "[t]he federal appellate courts have split on whether *Faretta v. California,* 422 U.S. 806, 819-20 (1975), which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library." *Kane,* 126 S. Ct. at 408. The Supreme Court continued by citing a decision from the Seventh Circuit, *United States ex rel. George v. Lane,* 718 F.2d 226, 231 (7th Cir. 1983), for the proposition that, by knowingly and intelligently waiving his right to counsel, a detainee also relinquishes any enhanced access to a law library. This principle, in fact, is quite solidly established in Circuit precedent. *See, e.g., United States v. Byrd,* 208 F.3d 592, 593 (7th Cir. 2000); *United States v. Moya-Gomez,* 860 F.2d 706, 743 (7th Cir. 1988); *Lane,* 718 F.2d at 227 ("when a defendant (pretrial detainee) is offered the assistance of appointed counsel and refuses the same, no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he choose to refuse the services of court-appointed counsel."). Steele's access to legal materials prior to and during trial was adequate to protect his rights. This access was enhanced by making an investigator and the services of Mr. Marsh available to him. "No hearing is required . . . if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States,* 961 F.2d 1339, 1343 n.5 (7th Cir. 1992). Steele's request for a hearing on the issue of access to the jail library is **denied**, as is the substantive claim of lack of access.

*Claims Asserted in Direct Appeal.* Steele renews his *Brady* and other claims presented in his direct appeal. Each of these claims, however, was resolved in his direct appeal, and once an appeals court "has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless

there is some good reason for reexamining it." *United States v. Mazek,* 789 F.2d 580, 581 (7th Cir. 1986). Steele offers no persuasive reason to revisit these claims.

*Ineffective Assistance of Stand-by Counsel.* Steele alleges that his Sixth Amendment rights were violated through Mr. Marsh's ineffective assistance before and during trial. The United States argues that Steele has defaulted on this claim by not raising it during direct appeal. However, a claim of ineffective assistance of counsel is an exception to the rule of procedural default and may be raised during a collateral challenge. *See Massaro v. United States,* 538 U.S. 500 (2003).

Steele's ability to overcome default is only his first stumbling block. Federal Community Defender Marsh did not represent Steele. Mr. Marsh was appointed as stand-by counsel for Steele, and there is no right to the effective assistance of stand-by counsel. *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992). As the term "stand-by" implies, stand-by counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney. *Id.* Throughout the trial, as the transcript reveals, Steele did elicit advise and counsel from Mr. Marsh, but he retained the reins of his defense throughout.

Steele argues that in *United States v. Flewitt*, 874 F.2d 669 (9th Cir. 1989), the Ninth Circuit found that the "obligation is fully satisfied by appointment of stand-by counsel, whose presence is intended to 'steer a defendant through the basic procedures of trial and to relieve the judge of the need to explain and enforce basic rules of courtroom protocol.'" *Id.* at 675 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984)). The Ninth Circuit does not, however, establish any right or standard to which stand-by counsel must adhere. That court commented that:

> [t]he pro se litigant may, of course, refuse to follow his stand-by counsel's advice, assuming he even asks for such assistance. That choice, as with all the other strategic decisions made by a *pro se* litigant, is his own. Having refused this assistance, however, he may not be heard to complain later that the court failed to protect him from his own ineptitude.

*Flewitt*, 874 F.2d at 675.

Steele's allegations against his stand-by counsel include that counsel did not answer all of his questions regarding trial procedure and did not advise defendant as he wished to be advised. Steele does not explain what questions went unanswered and how he wished to be advised. Steele complains that stand-by

5

counsel did not get in touch with witnesses Steele wanted at trial, including Jack Stollman, whose subpoena was allegedly made out incorrectly. However, even the cases that Steele cites do not impose investigative duties on stand-by counsel. *See also Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir. 1987) (defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead). Steele alleges that Mr. Marsh did not do what the magistrate asked of him, but as we have previously noted the record belies this assertion. Further, Steele attaches a letter from his stand-by counsel dated December 17, 1998, in which Mr. Marsh discusses tasks which he had done, procedures which he followed, and also those tasks which he perceived were beyond his assignment. This letter does not demonstrate that Mr. Marsh was unwilling to perform the duties of a stand-by counsel; rather, the letter is an attempt to clearly state the extent to which Mr. Marsh would go to accommodate both Steele's requests and the requests of the trial court which Mr. Marsh felt were beyond his appointment. Steele further alleges that Mr. Marsh did not act as an official liaison and provide the Marion County Jail officials with a copy of the court's order regarding access to the Jail's library, but again, Steele has provided no support for the proposition that stand-by counsel has a duty to act as a liaison between a defendant and other people and institutions.

Steele makes much of the fact that the investigator hired by the court wrote on one subpoena: "Mr. Marsh counsel for defense." This mere notation, though technically mistaken in its description of Mr. Marsh's role, does not demonstrate that Mr. Marsh had power over the subpoenas, the U.S. Marshals and the investigator, and did not convert Mr. Marsh's appointment as stand-by counsel to an appointment as counsel for the defendant. Finally, Steele alleges that Mr. Marsh admitted that he did not prepare for trial and deceived Steele as to which witnesses would appear for the defense. However, Mr. Marsh was not expected to prepare for a trial he did not expect to try. Steele does not state how or when Mr. Marsh's deception occurred, nor does he provide the content of the testimony of those witnesses which he believed would attend the trial and testify on his behalf.

A defendant who elects to represent himself "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"[1] *Faretta v. California,* 422 U.S. 806, 834-35 n.46 (1975); *see also United*

---

[1]Steele implausibly comments that he "is doing life for the lack of one word 'objection.'" Such a statement reveals his continued myopic disregard of the mountain of evidence arrayed against him. In addition, his presentations reveal that he is now experiencing the Pyrrhic victory of having exercised his right under *Faretta.* However, at the Hearing of October 5, 1998, in front of Magistrate Judge Foster, Steele was painstakingly advised about the duties of a trial attorney and the responsibility Steele would be taking

*States v. Chapman*, 954 F.2d 1352, 1363 (7th Cir. 1992); *Prihoda v. McCaughtry,* 910 F.2d 1379, 1385, 1386 (7th Cir. 1990). *United States v. Troxell*, 887 F.2d 830, 836 (7th Cir. 1989). Commenting about the role of stand-by counsel, the Fifth Circuit found that "the proper role of stand-by counsel is quite limited," namely, that:

> [s]tand-by "counsel" is thus quite different from regular counsel. Stand-by counsel does not represent the defendant. The defendant represents himself, and may or may not seek or heed the advice of the attorney standing by. As such, the role of stand-by counsel is more akin to that of an observer, an attorney who attends the trial or other proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense.

*United States v. Taylor,* 933 F.2d 307, 312-13 (5th Cir. 1991); *see McKaskle v. Wiggins*, 465 U.S. 168, 177-78 (1984).

Steele makes the related claim that the investigator hired by the court to assist him "did nothing." The record, however, refutes this claim. According to the record, Thomas Lauth ("Lauth"), the court appointed investigator testified that he served eight to ten subpoenas on behalf of Steele. This effort resulted in four defense witnesses at trial. Lauth provided Steele with the opportunity to investigate the charges against him and Steele does not allege that Lauth failed to act on any reasonable request.

*Dickerson v. United States.* Steele asserts that *Dickerson v. United States*, 120 S. Ct. 2326 (2000), defined constitutional rights which were violated in his case, and its ruling was not before the Seventh Circuit when his direct appeal was decided. In *Dickerson*, the Supreme Court held that *Miranda v. Arizona,* 384 U.S. 436 (1966), and its progeny govern the admissibility of statements in both state and federal courts made during custodial interrogation. The portion of *Dickerson* to which Steele cites is a footnote which quotes statements from the majority opinion of *Miranda.* Specifically, Steele relies on a passage in *Dickerson* which explains that *Miranda* "is replete with statements indicating that the majority thought it was announcing a constitutional rule." 120 S. Ct. at 2334. As such, the principles announced by *Miranda* were fully explicated in the law when Steele's direct appeal

---

on by going *pro se*. Steele replied: "I appreciate what I'm giving up." (Hearing Transcript at 43). Steele also stated at that same hearing that he understood the rules of evidence, although he did not know them. *Id.* at 49. As Mr. Marsh's letter of December 17, 1998, indicates, he provided Steele with a copy of those *Rules,* as well as the *Federal Rules of Criminal Procedure* and the Federal Criminal Code. The quality of Steele's defense (or lack thereof) rested in his own hands.

was briefed and decided. In addition, and more to the point here, none of the issues raised by Steele either in his direct appeal or in his § 2255 motion implicate his *Miranda* rights or any explanation of those rights discussed in *Dickerson*. *See Dickerson,* 120 S. Ct. at 2334 n.4.

*Cumulative Error.* Steele next contends that cumulative error was never considered in his direct appeal. He asserts that the appeals court found two "serious" errors but did not consider them together because of that court's belief that cumulative error is not a valid issue. He states that Seventh Circuit law also prevented appointed appellate counsel from bringing more errors to the attention of the court which altogether would have shown a fundamentally unfair trial.

Cumulative errors refers to mistakes by the trial court which, though individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001)(citing *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978)); *see United States v. Rogers,* 89 F.3d 1326, 1338 (7th Cir. 1996) (describing that the cumulative effect of trial errors "may deprive a defendant of his constitutional right to a fair trial"). To demonstrate cumulative error, Steele must demonstrate that "(1) at least two errors were committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000), *cert. denied*, 531 U.S. 1192 (2001). The Seventh Circuit reviews claims of cumulative error on direct appeal to determine if "the effect of the errors, considered together, could not have been harmless," or "[p]ut another way . . . that but for the errors, the outcome of the trial probably would have been different." *Id.* at 825.

Although Steele complains vigorously that the law of the Seventh Circuit prevented his appellate attorney from bringing a claim of cumulative error, he does not explain why this is so, as the case law cited above indicates that the Seventh Circuit recognizes and provides a standard for reviewing claims of cumulative error. Thus, to the extent that Steele's appellate counsel did not raise cumulative error during direct appeal, procedural default bars further review at this time. If by complaining about counsel's inability to raise such a claim Steele is suggesting the cause for this default, Steele must also demonstrate prejudice.

The Seventh Circuit's direct appeal review identified two errors: a *Brady* violation regarding the names and addresses of impeachment and exculpatory witnesses, *see Steele,* 2000 WL 796191 at *3, and the prosecutor's reference during rebuttal closing argument to Steele's non-testimonial courtroom statements and conduct, *see id.* at *4. Following the Supreme Court's admonition that a petitioner

8

is entitled to a fair trial, not a perfect one, *Rose v. Clark*, 478 U.S. 570, 579 (1986), as well as the Seventh Circuit's caution that "courts must be careful not to magnify the significance of errors which had little importance in the trial setting," *Alvarez,* 225 F.3d at 825 (citing *United States v. Ward*, 190 F.3d 483, 491 (6th Cir. 1999)), this court examines "the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Id.* (citations omitted).

Steele has established that there were only two errors during his trial–the errors found by the Seventh Circuit during direct appeal. The significance of those two errors does not convince the court that, but for the errors, the outcome of the trial probably would have been different. In addressing the prejudice of the *Brady* violation, the Seventh Circuit found that:

> in light of the overwhelming amount of evidence against Steele, including Wooldridge's testimony, the testimony of the police officers, and the fruits of the searches of Steele's house and pickup truck, we cannot conclude that the result of the proceeding would have been different had these witnesses been subpoenaed and testified. Further, even if the witnesses would have testified to the statements described in the Brady disclosures, . . . we find no reasonable probability of a different verdict had these witnesses testified at trial in conformity with their statements.

*Steele,* 2000 WL 796191 at *4. The Seventh Circuit also found that the proposed testimony of the withheld witnesses could not "exculpate Steele for part of June 25 and the rest of the week" to which there was "significant corroboration." *Id.* Further, the Seventh Circuit also found that the error related to the prosecutor's rebuttal argument "did not result in 'plain error' that affected Steele's 'substantial rights' or affected the 'fairness, integrity or public reputation of judicial proceedings.'" *Id.* at *5.

Considering the entire record, the nature and number of alleged errors committed, the fact that the errors were not interrelated, and the strength of the prosecution's case, Steele has not demonstrated prejudice needed to overcome the procedural default, nor has he shown that but for these errors, the outcome of the trial probably would have been different.

*Ineffective Assistance of Appellate Counsel.* Steele also alleges that his appointed appellate counsel did not raise all of the issues Steele wanted raised, including cumulative error, and did not base his arguments on the law of other circuits.

9

To support an ineffective assistance of counsel claim under *Strickland*, Steele must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 695 (1984). A failure to establish either prong would result in a denial of Steele's claim. *See Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2001). The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). The prejudice prong of *Strickland* requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.;* see also *Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004). Under the *Strickland* performance prong, an appellate counsel's performance is deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims raised. *See Winters v. Miller,* 274 F.3d 1161, 1167 (7th Cir. 2001). To establish the *Strickland* prejudice prong, a defendant must show that there is a reasonable probability that appellate counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *See id.*; *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003) (for a claim to support relief, there must be a reasonable probability that issues not raised would have altered outcome of appeal). "[C]onclusory allegations do not satisfy *Strickland's* prejudice component." *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002) (citing *United States v. Boyles,* 57 F.3d 535, 550 (7th Cir. 1995); *United States v. Woody,* 55 F.3d 1257, 1272 (7th Cir. 1995)).

On direct appeal, counsel advanced four issues, resulting in the Seventh Circuit's decision that two of those issues constituted error, albeit not plain error necessary for Steele to obtain relief. This is not a case where counsel failed to find significant issues and argue those issues in a persuasive manner. "Effective appellate advocacy involves winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at the most a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983). That appears to be precisely what Steele's appellate attorney did.

Further, Steele did not have the right to have every "conceivable argument on appeal [advanced] which the trial records supports." *Gray v. Greer,* 800 F.2d 644, 647 (7th Cir. 1986). Neither does an indigent defendant have a constitutional right "to compel appointed counsel to press non-frivolous points [ ], if counsel, as a matter of professional judgment, decides not to present those points." *Jones,* 463 U.S. at 751. Steele is unable to point to any issue which would have been successful on direct appeal and thus his claim that appellate counsel was ineffective has no support. None of the claims raised in his § 2255 motion could support such a finding,

10

and certainly not his claims that appellate counsel failed to include cumulative errors or arguments based on the case law of other circuits.

Steele's bid to lay prejudicial blame at the feet of his appellate attorney in the circumstances of this case exceeds the boundaries of a credible complaint. The Seventh Circuit noted in *Farr*, 297 F.3d at 658:

> We have observed in the past that criminal defendants frequently "demonize" their lawyers. "If we are to believe the briefs filed by appellate lawyers, the only reasons defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds."

The same is ineluctably true as to Steele's arguments that he was denied the effective assistance of counsel. There is no entitlement to relief as to this claim, based on either the performance prong or the equally important requirement that he have suffered prejudice.

*Structural Error.* In his *Limited Memorandum* filed on March 13, 2002, Steele asserts that three of his alleged errors fall under the rubric of "structural errors."

Structural errors are an extremely limited set of constitutional errors affecting the entire conduct of a criminal trial which have been deemed incapable of harmless error review because of their pervasive and corrosive character. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). "Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair." *Neder v. United States,* 527 U.S. 1, 8-9 (1999) (internal quotation omitted). Structural errors have been found in a "very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468-69 (1997) (citing precedent finding structural errors for: (1) a total deprivation of the right to counsel; (2) lack of an impartial trial judge; (3) unlawful exclusion of grand jurors on the basis of race; (4) denial of the right to self-representation at trial; (5) denial of the right to a public trial; and (6) an erroneous reasonable doubt instruction to the jury). This court is thoroughly alert to any possibility of structural error in any case and is capable of taking the necessary remedial steps where it is found to have occurred. *See Harrison v. Anderson,* 300 F.Supp.2d 690, 698-99 (S.D.Ind. 2004), *aff'd,* 428 F.3d 652 (7th Cir. 2005).

Steele's sense of the errors he believes occurred before and during his trial do not qualify as structural error, because they are not among the categories noted in *Johnson* and because his contentions are case-specific. *See Neder,* 527 U.S. at 14 (structural errors implicate basic protections, and render a criminal trial

11

fundamentally unfair or an unreliable vehicle for determining guilt or innocence; it is a categorical determination).

Apart from the plausible arguments of procedural default and statute of limitations, the substance of Steele's claims of structural error have no merit. He alleges that he was denied a public trial, asserting that the court of appeals found him guilty based on the testimony of two people who were not cross-examined. He also alleges that, had he been able to cross-examine the prosecutor, he could have proved his case. However, Steele was found guilty by a jury of his peers and his conviction was affirmed by the Seventh Circuit Court of Appeals. The prosecutor, moreover, was an advocate, not a witness, and as an advocate did not give evidence and hence was not in a position to be cross-examined.

Steel also alleges that this judge was biased against him and offers four examples of bias. For example, Steele alleges that "[b]efore trial the Judge asked a question that shows that the mind of the court was already decided as to the facts." Such vague allegations are not sufficient to support the defendant's claim. *See Oliver v. United States,* 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (unsupported allegations may be dismissed without a hearing); *Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir. 1996) (unsupported allegations may be dismissed without a hearing).

Finally, Steele alleges that he was denied the right of self-representation because the court stated that Mr. Marsh was his attorney, because subpoenas were made out by someone else, and because he could not cross-examine himself and the prosecutor. In *McKaskle v. Wiggins,* 465 U.S. 168, 175 (1984), the Court revisited a defendant's right to self-representation, which plainly encompasses certain specific rights to have his voice heard. The Court found that the "pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." Steele provides no support in the record for his allegations of mishandling of the defense by anyone other than himself, including no support for this proposition that he should have been able to cross-examine two people who were not called as witnesses. The record demonstrates that Steele was in fact accorded all of his pertinent rights.

*Apprendi.* Steele next argues that he was illegally sentenced in light of *Apprendi v. New Jersey,* 530 U.S. 466 (2000), by the amount of upward departures used at sentencing. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. *Apprendi* is not applicable when the sentence

imposed is within the statutory maximum for the crime of which he is convicted. *United States v. Jones*, 245 F.3d 645, 649 (7th Cir. 2001).

Four of the offenses of which Steele was convicted clearly do not implicate *Apprendi.* The jury convicted Steele of violating 18 U.S.C. § 922(g)(1), which carried a penalty of only 120 months, and Steele received a 120-month sentence for that count. *See Jones*, 245 F.3d at 649. *Apprendi* also does not apply if the statutory maximum penalty is life imprisonment. *See Talbott v. Indiana*, 225 F.3d 866, 869 (7th Cir. 2000). Steele's conviction for kidnaping, in violation of 18 U.S.C. § 1201, and his two violations for use and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), each carries a maximum penalty of life imprisonment.

Under the federal carjacking statute, 18 U.S.C. 2119, the first subsection provides for a maximum penalty of fifteen years of incarceration. The second subsection provides for a maximum penalty of twenty-five years of incarceration if serious bodily injury resulted, and the third subsection provides for a maximum penalty of life imprisonment if death resulted. Count 3 charged Steele with having violated 18 U.S.C. § 2119(a).  The court did not instruct the jury that it was required to find that the victim endured serious bodily injury as a result of the carjacking. Nonetheless, Steele was sentenced to twenty-five years on Count 3.

In *Jones v. United States*, 526 U.S. 227, 252 (1999), the Supreme Court held that 18 U.S.C. § 2119(1)-(3) comprises "three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." The Court explained further that "serious bodily injury," as it appears in § 2119(2), represents an essential element, rather than a sentencing enhancement, of the independent offense defined by § 2119(2). *See id.* As was the case in *United States v. Taylor,* 226 F.3d 593, 600-01 (7th Cir. 2000), the court did not instruct the jury that "serious bodily injury" was an element of the carjacking offense of Count 3. This omission was error in light of the sentence which was imposed as to Count 3. The United States concedes this error and the need for resentencing.

Thus, Steele's petition as it pertains to his *Apprendi* claim regarding the sentencing for Count 3 is **granted.**

As to the remedy for the error discussed above, Steele must be sentenced to a period of incarceration within the statutory range of not more than 15 years. However, he need not be present for the corrected sentence. *United States v. Jackson,* 923 F.2d 1494, 1496 (11th Cir. 1991) (the right to be present at one's sentencing "does not translate into a right to be present whenever judicial action modifying a sentence is taken"); *Bontkowski v. United States,* 850 F.2d 306, 312 (7th

13

Cir. 1988) ("Moreover, the defendant's presence is not required to correct an illegal sentence. Nothing the defendant could say would aid the court in modifying a sentence to conform to mandatory statutory requirements."). The court has considered the factors set forth in 18 U.S.C. § 3553(a) and finds that a 180-month (15 year) sentence is sufficient but not greater than necessary to effectuate the purpose of the Sentencing Reform Act of 1984 for the offense charged in Count 3. As was the case with the original sentence for Count 3, this sentence will be served concurrently with the sentence imposed for Count 1.

*Other Alleged Sentencing Error.* Steele claims that his due process rights were violated when the United States misstated the location of two of the seven sexual assaults he committed on the victim. Seven acts of sexual assault were used by the sentencing court as a basis for two-levels of the six-level upward departure in imposing the sentence on Count 1.

During sentencing, the United States sought a nine-level upward departure on Count 1; seven of the nine levels were based on seven separate sexual assaults on the victim orally and vaginally; and one level for the three anal sexual assaults. The evidence presented at trial established that Steele sexually assaulted his victim orally and vaginally twice in the garage of his residence, once in the bedroom of his residence, and five times in Wisconsin. The record also established that Steele assaulted his victim anally three times. At sentencing, the government mistakenly stated that one of the seven oral and vaginal assaults had occurred in the victim's residence. While the location of one of the assaults was in error, the number of the assaults was accurate. The court granted a two-level upward departure and based that departure on "the trial testimony as well as the matters set out in the presentence report." (Sentencing Transcript at 26-27). Steele was not sentenced on the basis of materially inaccurate information.

*Miscellaneous Claims.* Finally, Steele raises a number of claims which have no support in the law. Steele alleges that he was denied trial by his peers, and instead was found guilty by the Court of Appeals. This is a misconception. The appellate court reviews the trial and sentence. It does not make an independent finding of guilt. Steele alleges that Judge Wood and the government knew that Steele was innocent. He appears to complain about his appeal, the oral argument before the Seventh Circuit and the Seventh Circuit's opinion because in the opinion of Steele's direct appeal, the Seventh Circuit commented about the credibility of witnesses, the effect of certain testimony on the jury and the jury's common sense. Steele's wide ranging arguments, lacking support in fact or law, criticize the process of appellate review and as such are beyond the purview of this court's review pursuant to § 2255.

In a totally absurd argument, he asserts that once the Seventh Circuit found that the prosecutor was a witness against him, and that his own actions were testimony and proof of guilt, that this court must find that Steele had a right to cross-examine and confront these witnesses. He also states that he should have been able to cross-examine the trial judge. These arguments are fanciful and do not require relief sought by Steele because they do not relate to the proceedings which occurred, including the witnesses who actually testified.

### III. Conclusion

Based on the foregoing, therefore, Steele's motion pursuant to 28 U.S.C. § 2255 is **granted,** but only to the extent that the sentence for Count 3, carjacking in violation of 18 U.S.C. § 2119(1), must be **vacated and reimposed.** The reimposed sentence for Count 3 is hereby set at 180 months, to be served concurrently with the sentence imposed for Count 1. In all other respects, Steele's motion is **denied.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 04/20/2006

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana